The issue in this appeal is whether information, particularized facts, provided to plaintiffs' attorneys in a securities action about deliberately reckless conduct. Let me ask you a couple more specific questions on that. On the question of what the word assistance means, we have arguments going to logic and common sense and dictionary definitions by each side. I don't recall that there's a definitive California Supreme Court decision saying what assistance means in a D&O policy, is that correct? That's correct, Your Honor. Or a CALAP decision? That's correct, Your Honor. Okay. Now, so I suppose what we can do is look at expectations of the insured, reasonable expectations of the insured under California law? No, Your Honor. I don't believe that makes it ambiguous. Well, you know, it occurs to me, here's what occurred to me. There are two approaches here. One is it's not ambiguous. And if it isn't, it cannot mean what the insurance company says it means, because then responding truthfully to a deposition, responding to a subpoena, and answering questions truthfully at a deposition would be assistance, and the coverage would be loss. So it can't mean that. So it would seem that if it's not ambiguous, it has to mean what the district judge says it means, more or less, some kind of voluntary instigation or conduct initiated. The alternative view is it's ambiguous. Maybe it means any kind of assistance, just taking a dictionary definition. And maybe it means something narrower, as the district court said. And then you use contra pro forentum, under Bank of the West, and the insurance company is stuck with the narrower definition. And nos quatora socis seems to make it easier for me to look at the word in the context of participation and intervention, the other and solicitation, the other words in the string of words that the policy uses. So I don't get where you how it can be unambiguous with the extremely broad definition. I just don't get it. Ms. Bratton. I would suggest a different question to be asked. Instead of taking the word assistance out of the entire policy, or even those four words, intervention, participation, if you look at assistance in the context of the exception, in the context of the exclusion to which the exception applies, and in the context of the entire policy as the parties would have negotiated it in 1999, it becomes totally unambiguous. That's what I'm doing. And it seems to me more likely it does become totally unambiguous against you. I mean, if you have the whole idea of D&O insurance like this is to give people some coverage for shareholders' derivative actions, and then a shareholder's derivative action, there are always going to be some people who get subpoenaed and talk. Your Honor, there are several purposes for D&O insurance, one of which is securities actions. And anyone negotiating in 1999 for the insured versus insured exclusion would know about the PLRSA, would know that those private security actions are almost nil as a result of the extremely high pleading requirements thresholds required by the PLRSA. Almost nil? Well, they are just so many cases with the Milberg Weiss firm. I mean, people buy this insurance against Bill Lerich. Right, Your Honor. And how many of those are dismissed on 12b-6 versus having the SEC come in and do the investigation, which, by the way, is absolutely covered under the D&O policy when the SEC is investigating as opposed to a shareholder suit. So what you have is a policy in 1999 that says unambiguously we don't cover at all, we provide no coverage for shareholder security suits. That's not what it says. Page 211, volume 2, volume 2 of the record, page 211, left-hand corner, it says no coverage for shareholder's derivative actions except, and there's an except to the exclusion. But what we see first is we exclude, and then it lists nine different exceptions. And you have a very narrow exception for suits that are totally independent of and totally without the participation assistance, yadda, yadda, yadda. Now, as I understand, you did not have any evidence to present that the suit was instigated by any directors or officers. Is that right? Your Honor, it was brought back to life. It was stone-cold dead. It had been dismissed. Now you're being metaphorical, and we're talking about Elijah the Prophet. I want to just talk about physical facts of what happened here. I'm trying to be as concrete as possible, Your Honor. Okay, I thought what happened, and it's a big record. I could be educated because I'm wrong. I thought what happened is plaintiffs were kind of short on evidence. They're calling every possible witness they can think of. They run across these two guys who were officers or directors, and they take the call and answer the questions. It's not them calling Larrick. It's Larrick or his firm calling them and asking questions, and they answer the questions. And that's all you've got, as I recall. Am I right? Let me put a little flesh on those bones, Your Honor. You had a 72-page complaint that alleged very specific facts of financial reporting that was false, deliberately false, that had been done, a leveraged ratio that was misstated to banks in order for a loan covenant not to be breached. Seventy-two pages, and Judge Wilkins dismissed it under 12b-6. She said you got motive pleaded here. And so far, everything you're saying is irrelevant to the exception to the exclusion. Not at all, Your Honor. You're just saying these are very bad folks. Bear with me. Bear with me. Judge Wilkins said you've got motive demonstrated that, yeah, these guys had motive to falsify all this stuff. You have intent, but that's not the case. Your argument, though, it's like somebody representing the carrier in a homeowner's policy telling me how negligent the homeowner was not to shovel his walk. It just doesn't matter. No, I'm talking about the PLRSA. I'm saying that all those 72 pages of allegations are not enough under the PLRSA. Now, what did companies do? What did the corporations do when they made allegations against them? They went to Congress and they said, counsel, so what? I mean, let's suppose the complaint was subject to dismissal under the PLSRA. As I recall, I wrote something, Rinconi, I think it was called, that made it easy to dismiss these things under the PLSRA. Let's say all that's true. It doesn't matter. The exception to the exclusion is about whether the action is brought and maintained totally independently of and totally without the solicitation, assistance, participation, or intervention of any director or officer. That's all I care about. Let's look at totally independent. This case was totally dependent upon Arthur Bravis' statements to counsel. So if there's one witness who winds up making the case for the plaintiff because he's subpoenaed, he testifies, tells the truth, and it sinks the defendant, then the case is dependent rather than independent and there's no coverage. That's your theory. That is precisely why you have to look at the facts of each case and decide each case as it comes up from the facts before it. Breyer, is that your theory? Yes, Your Honor, because you had conceded, I thought you had conceded that a subpoenaed testimony from a subpoenaed witness would not void the coverage. Have you, are you unconceding that concession? You're right, Your Honor. And there is, as Judge Posner said in the Level III case, I mean, his theory is that if the plain, if the claim is uncovered, is covered at the beginning, if the claim is covered at the beginning, then it can't lose coverage because something happens. So under that theory, if a claim is covered at the beginning, then if just because a witness was subpoenaed and involuntarily gave testimony, then you would, you would have, still have coverage. And you're right, I withdraw my view. So what you said to me a minute ago, you withdraw what you said. I withdraw. I withdraw. All right. Okay. So now let's move a step back from the subpoena. The witness isn't subpoenaed. He's called on the phone and asked the question. And although he initiated nothing, did nothing to bring this about, he asked, answers the question, whatever it is, was there a correction in your accounting in such and such a year or whatever it is, he answers it truthfully and does not volunteer anything. Coverage is lost? Coverage is lost. And I'll tell you why. Yes. First of all, as even Judge Wilkins said during the transcript testimony, that witness is a former officer of the company. He could have said, send me a subpoena. Okay? These calls come at a time when, as you said, the plaintiffs are light on evidence. They've been dismissed because they don't have particularized facts. They don't have firsthand evidence. Do you have any case that says coverage is lost if you answer the phone and answer the question truthfully? No, Your Honor. The reason is. It seems extraordinary to me because I construe the word nos cator asocies. I construe it to mean something like what the surrounding words say, solicitation, participation or intervention. Those are all active voluntary acts. That's somebody going out. It's kind of like me and my wife are broke. So I say, let's have you say that I injured you because I didn't shovel the walk and you slipped and fell and you sue me and that way we'll get all the money from the insurance company. And that's the lower level version of the same thing. Look a little earlier, Your Honor. It says any suit brought or maintained. All of the cases today have been on brought, and whether or not one of the parties was an insurer. Do you have a single case from anywhere that reads the word assistance as broadly as you want us to? Your Honor, I'm not hedging. I'm not hinging the argument on assistance. I'm saying under the facts of this case, was the case brought and maintained, which we have to give some meaning to the word maintained, with the assistance. And understand that these are. Sure. All the officers goes to a lawyer and says, I want to sue the company I used to work for. I was a director there. He brings it and he maintains it. Why wouldn't the plaintiff's bar get smart pretty fast and say, if you're a party, they lose all their D&O coverage. So don't be a party. I'll bring in some shareholders, and you just give me the information on the QT that I need. And. I don't want to interrupt your answer. I have a question. That's fine. Because I'm just not following this exactly. When I asked you to clarify your concession about subpoena, you said, well, that's because there was coverage at the beginning, and coverage is coverage at the beginning, but now you moved on to maintained, because this action, I guess there was coverage at the beginning, and they actually paid for the defense costs until these shareholders, I mean, these, yeah, I guess they were shareholders, until these directors provided the information. And so now I'm getting the idea that if the suit was covered at the beginning, was failing, and now it's maintained that there's no, because of this assistance, there's no coverage. But I don't see why that would make a difference between subpoena or not subpoena. If you're hanging it on to maintained, why does him being subpoenaed or not being subpoenaed make a difference to what assistance means? Because you cannot compel testimony under the PSLRA until you have survived a motion to dismiss. So the whole subpoena issue is not going to come into play at all, because the case is going to be dismissed unless you have someone voluntarily give information. Why does it have to be voluntary? I think what you're saying is if the plaintiff would lose, but for some officer telling the truth, then the suit is maintained with the assistance of the officer. Have I got that right? Say that again, Your Honor. If the plaintiffs would lose, but for the truthful information and testimony of an officer, then the case is maintained by that officer and there's no coverage. The only thing I would do is substitute lose with survive a dismissal motion, because it's so important that the PLRSA doesn't have to do that. I think fail to survive a dismissal motion means lose, doesn't it? Right. Okay. Yes. But I mean, it's so important to have that stage of the proceedings considered because that is such an objective standard. And that is what the PLRSA is all about. We want objective. So you're saying that the duty, that the insured has a duty to clam up until the motion to dismiss is over. They can't tell the truth until the motion to dismiss is over. This is about duty, Your Honor, quite frankly. This is about an objective standard or an objective rule, as Judge Posner would say, perhaps not a specific standard about this, that, or the other. An objective rule that balances the PLRSA's objective rule. The higher these pleading standards require particularized facts of reckless acts, the more objective you can have a standard that says the system is. The policy doesn't say anything about the PLSRA. It's just a not unusual version of the duty to cooperate clause. And the clauses that all liability insurance policies have to prevent collusion. But you cannot ignore the statutory law in effect at the time that the contract is made. And the 1995 PLRSA was in effect, these policies are negotiated by sophisticated in-house counsel who know very well what they're doing. It's not that sophisticated a deal. Your car, your auto insurance policy gives you a duty to cooperate. And the insurance companies often send something to the policyholders, what to do if you have an accident. They say, don't admit fault. If the other driver says, what were you doing? And you say, I just wasn't looking. And then the cop comes and says, what were you doing? And you say, I just wasn't looking. You don't lose your coverage. And it strikes me that that is precisely analogous to this case. And that is not unusual in these types of cases. There is another provision in that very policy that says, if you admit liability, you lose your coverage, because these types of cases have the kind of conduct that you can't create the claim, which is essentially what the insured has done in this case. They do say you can't admit liability, but that has always construed comfort pro for intem, so that people can tell the truth and not lose their coverage. Do you know of any cases to the contrary? I mean, maybe it's been a while since I practiced this kind of law. It's been more than 20 years. Maybe it's changed. Well, this Court's own decision in American Medical International says, look, we don't need to look at the underlying purpose, the duty, the frailty. When the language itself is clear and shows a broader purpose, then you're standing up for yourself. Yeah, to me, assistance does seem clear. You voluntarily assist. So there is nothing, I would submit, in that exception as applied to the facts of this case that's ambiguous. So what you want is assistance to be read as voluntarily, and because they weren't subpoenaed, they say there is no coverage. That's it. Assistance is voluntary, I would suggest. Okay, so you're reading voluntary into assistance. Well, I think if the common usage of assistance, people aren't usually compelled. I don't assist someone because I'm compelled. You know, the district court came up with a lot of theories about how something could assist somebody without somebody knowing that it assists. You are reading some intent, some voluntariness into the word assistance. I mean, it doesn't seem to me that anybody here is talking about assistance, you know, in its broadest sense. Even you have narrowed it. That's because it must be put within the context of broader maintaining. What is assistance in the context of maintaining a lawsuit? And in the context that if you have a bright line rule, an objective rule, and you know, the problem is, how do you come up with a rule? Unless you look at the specific facts. Why don't we look at what happens in car accident insurance? Well, Your Honor, I would suggest securities litigation is not analogous to car accidents. Securities litigation is not analogous to personal injury tort litigation, but liability insurance for directors and officers is analogous to liability insurance for drivers of automobiles. They both have similar protection against collusion. Let me suggest this. Judge Wilkins didn't even go that far. She came up with a test that says, as far as I'm concerned, the test should be you have an intent to assist. Well, since you didn't cite any authority for your version of assistance, she didn't really have to go poking around in other kinds of liability insurance. There has to be some kind of rule of interpretation, Your Honor. If you put a rule that says, well, I think this clause means you have to economically benefit, how does that help? I mean, then you're going to have to do something about economic benefit. I was troubled by that interpretation by the district judge. It seemed novel to me compared to most liability insurance anti-collusion clauses, but I could not see where it affected the outcome. It seemed to me that we reviewed de novo, so it really doesn't matter whether the district judge was right in every jot and tittle. And if she was wrong on economic benefit, I don't see where it affects the outcome. How does it affect the outcome? Well, she indicated it affected the outcome because there was insufficient evidence that Mr. Gravis had an economic interest. To me, it looked like bolstering. But I'm going to give you an explanation. She was giving one more reason. But there's no such thing as a finding of fact in summary judgment. I don't see where it matters. I would say the outcome is affected that you have to give this language some meaning. And you have to give it some meaning in the facts of this case. And in the facts of this case How about voluntary and active? Or how about even better, we look at what it means in other kinds of liability insurance? I think it has to be in the context of an exclusion of all shareholder suits, Your Honor, and a very narrow exception. And construing the plain and obvious within the facts of this case, language of that exception, whether or not by allowing plaintiffs to overcome a 12B6 motion that had previously been granted, there was assistance in the maintenance of this shareholder action. So you want us to make a different body of insurance law for companies that issue D&O policies for shareholders' derivative actions than the body of insurance law that generally applies to anti-collusion clauses? No, Your Honor. I want you to enforce the plain and ambiguous language of this policy. Counsel. Thank you. May it please the Court, my name is Warrington Parker. I represent James Harris. As the Court indicated through our two counsel, I intend to argue for 15 minutes, although I would go longer if the Court were made to. Would the Clerk make it 15 and 5, please? Thank you, Your Honor. Just cut his down to 15. Let me ask you a couple of questions I have. Everybody's telling us how we have to construe assistance, and nobody gives us a case by a California Supreme Court or even a California Court of Appeals saying here's what assistance means in an anti-collusion clause. Do you have a case? I do not have a California case. This is what we have in California about assistance, and then there are two cases outside of California that talk about both assistance and, in fact, maintain. The California case that I think the Court should look at about assistance actually is defining it in terms of the cooperation clause. It's cited in the reply brief of Gulf. The case is called Hall, and I believe it's Traveler's Insurance, but I certainly know it's called Hall. And in that case, the plaintiff in the case failed to show up for compelled deposition. You also did some other things. That's a different thing. That's not the anti-collusion clause. That's your duty to cooperate. The only reason why it's important, I think, it's important because the Court must give similar terms in a policy agreement, a same or similar definition, and it is an artificial definition to say that this word at least is defined, the word assistance in the anti-collusion provision, the insured versus insured provision, does not also include coerced testimony. It's so-so. It requires one more jump. But I'd like a case that tells me what assistance means in an anti-collusion clause. There are two cases. There's one that is most directly on point. It's called Denari v. Genesis. Can you spell that first? Denari, D-E-N-A-R-I. It is cited by Mr. Harris and Mr. Stone. It is a Northern District of Illinois case. It's a case which also indicates how you might prove someone provides assistance. And the facts of that case are simply that a person was sued. He then began to speak to Plaintiff's counsel. I cannot remember if it's a him or a her. Let's use her for now. The plaintiff brings the suit and goes to the court. The plaintiff brings the suit. I'm sorry. No, let's do it this way. The plaintiff is an independent third party, brings a lawsuit against Navigant and one of the officers of Navigant. That officer of Navigant then approaches Plaintiff's counsel. He states, he admits that he did so in order to get out on an easy settlement. Plaintiff's counsel submits a declaration in the insurance coverage matter. Plaintiff's counsel states, this man helped me or this person helped me. So there the officer approaches the lawyer instead of the lawyer approaching the officer. And the officer does it to share in a settlement. Correct. Okay. What's the other one? The other case is called Welch v. Agriculture and the manager of the name might be fine for you, but it's Welch. It's also from the Northern District of Illinois. Geez, no State Supreme Court. Okay, another Illinois District Court case. That is a case where actually the court concluded that the facts were insufficient to prove that there was a state case. The facts were Plaintiff alleged, Plaintiff, a third party, alleged that that plaintiff was in a room. The officers and directors were speaking to the plaintiff. And those facts made it into, those alleged facts made it into a complaint. The plaintiff used something that an officer said to him when they were talking. And what the court said was, we can't tell on summary judgment whether this is assistance. Neither of these is that great. You didn't have to look in any of the good treatises, like I guess the best is Keaton, and then a good can opener is Long and Liability. I've given all the cases we could locate that defines the word assistance in this context, in the context of an insured versus insured. Can you say anything about this? Not that I week. Not anything more than what we've been noting to or already argued to the Court. And let me then tell, explain why it is that the, just to give you a framework of what it is, I think the failing in the Gulf brief is, and what is critical. Let me ask my other question I have for you first. On the financial incentive, it looked to me like there was no good basis in law for the district court to say that there had to be a financial motive. Does it matter? It does not. I mean, let's do it this way. I think that as a proxy for determining whether someone is assisting, I think it's fair. Is it essential to the whole thing? No. Is it part of the definition of assistance? I would not say more than what I've said. No, I would not say to this, that this Court is bound to accept that as the definition of assistance. No. I do not think that you need that. I can imagine someone actively pursuing, actively assisting. I can't quite believe that we don't have any state, state supreme courts get to decide this, not federal district courts. Right. And we don't have any state supreme court cases saying what assistance means in a non, in an anti-collusion clause. No. And what about not D&O insurance, but other, a lot of other types of insurance have anti-collusion clauses. Generally, liability insurance does. And we, I mean, there's certainly the cooperation, the cooperation type provisions, which is what I started out with. That's different. You have to assist the insurance company in defending you when you have liability insurance. Although I do think it gives a window of what assistance means in that context. Certainly, it counts, it comes against an argument that says it can't be compelled testimony, or testimony that results from a subpoena. I do think it's important for that. Yes, ma'am. I, that, let me ask you, she says that that is crucial, because we're talking about the divide between surviving the motion to dismiss and arrest the jury. And, you know, I guess, generally, you don't take depositions before the motion to dismiss. But she implied there's something in the PLPS, in the statute that says you can't take a deposition. Well, in the PSLRA, that is true. That is a true statement. But understand, this provision, the, one of the main faults. In the, that was in the 1995 version, that you can't take a deposition. One of the main faults in this case, though, is that that's, you do not start with, you do not take an exclusion like this. And then say, I'm going to look at just these facts of the case. You have to arrive at the definition of the term and then weigh them against the facts of the case. Okay. What's your definition of this term? It means that you intentionally intend to aid and you do aid. So how about the economic benefit part that the Court's? I would not support that more than to say that it is a proxy of, but it's not, it's not part of. So you don't rely on that? I'm not. Well, if that's the standard, you intend to aid and you do aid, why don't you lose? Because there's no evidence that Mr. Grubb has intended to aid anyone in this lawsuit. How come you don't like the voluntarily and actively formulation? I do agree with that. I, I, I, I, I, I, I apologize. I do think it has to be a voluntary act as well. In other words, it must be voluntary or else the outcome of this is ephemeral. There's no. I think the judge said voluntary and active. Correct. I would say voluntary and intentional. And the reason why voluntary I think is self-explanatory. Now, understand, when Galt suggests that the word assist is naturally limited to voluntary acts, that's actually not a true statement at all. The plain and ordinary meaning certainly doesn't suggest that at all. The, and I just lost my train of thought, I know that the plain and ordinary meaning doesn't suggest that it's merely a voluntary, it has to be just a voluntary act, that's it. And the case that they cite in support of it is Comadre de Padres, excuse my Spanish, v. Honig. And that's a statutory interpretation case. It says that assist within the context of the statute doesn't mean compelled or coerced because the statute actually uses different words to indicate that. So it is an artificial, it's actually artificial to suggest that there's that distinction. And when you start moving then through the remainder of the rules of governing the interpretation of a, of an insurance policy, that distinction actually can't work, because it, and if you do believe that it's possible to arrive at that distinction, then I'm going to suggest to you that there is certainly an ambiguity. There must be an ambiguity because the plain and ordinary meaning of this word is capable of including even coerced testimony. And if you find ambiguity, if you find it's capable of two reasonable meanings, then we win, because your job then is over. You have to decide in favor of coverage. You do not pick the, the, the interpretation that goes against coverage, and that's Safeco v. Robert S. That's also State Farm v. Jacober. I'm a little surprised you want us to look at the duty to cooperate clauses in order to figure out what the anti-collusion clause means. What I'm suggesting to you is, and I wouldn't make this argument otherwise, I find disingenuous the argument that assist in this, as used in this policy, does not include coerced testimony. And it is only instructive to me that when, when someone is talking about assist in terms of cooperation, it actually does include showing up for coerced testimony. That is the only reason I look at that, because I think the argument is otherwise disingenuous. I don't think you can do that, actually. I don't think it fits the plain and ordinary meaning. And certainly there are instances where someone can say, I was forced to help. That is not an uncommon experience. And it is dangerous and unwise to focus just on PSLRA, because, again, the goal is not to interpret an exclusion as it happens. The Court in Safeco v. Robert S. rejects an argument that says, well, we're having trouble with this interpretation. It might mean a couple of things. And what the insurer was asking the Court, the California Supreme Court, to do is say you don't have to issue a broad rule. You just have to apply it to this case. And the California Supreme Court said, no, our job is to arrive at a definition using the rules that we apply. Ginsburg-McGillivray, but for officers' and directors' liability, why aren't we just talking about the context of the DSLRA? You know, what else is you thinking of beyond that? There are shareholder derivative suits which do not involve securities claims. They don't have to involve securities claims at all. They do sometimes. And this certainly would cover that. And so we're talking common law fraud or common law claims that can be leveled. And so we're not talking about a heightened pleading requirement. And we're not going to do that. Roberts, you mean a lot of the claims that could be covered by D&O could be like the corporation sold a building to a director for a price far less than market? And I would suggest to you, a lot of the cases that are cited that are broad cases Most of the cases in the insured versus insured context, they do involve, they always they almost typically involve claims being brought by an officer or director. But they do not, they are not all securities claims. They also do involve shareholder derivative suits. Okay. So when you do look at the context of this, one cannot accidentally solicit claims, one cannot accidentally participate in claims, one cannot accidentally intervene in claims, and it is important to read in context. The California courts require you to do so, that's McKinnon. Courts then ask, require you in California, the California Supreme Court says, once you arrive at a definition, the next task is to consider whether the definition is absurd. Absurdity requires, contrary to the arguments made by Galt, it requires consideration of facts not necessarily before the court. For example, in Safeco and in McKinnon, the court looked at the pollution excuse, pollution in McKinnon. It looked at the illegal conduct exclusion that was at issue in Safeco, and then it said, if we apply these, this broadly, as broadly as it suggests, it leads to absurd results. And so here, because the word assist can be triggered under Galt's definition if someone is called on the phone and lied to and provides that critical piece of information. And now, I don't want to downplay this. I know that Judge Wilkins, in her opinion, said that the statements help aided her. There is one statement that is cited in her opinion that is CW 14. Roberts, Jr.: Oh, you mean if somebody called up and said, hello, I'm a paralegal for the firm that's defending you and the other officers, but actually, it's a detective working for the plaintiffs, and the person thinking he's talking to his own lawyer is paralegal, lets the cat out of the bag, that would be assist under the insurance company's interpretation. The only way you can stop that from being assist is if you begin to import a limitation. And again, if you begin to import a limitation, that means my reading is plausible, and that means I win, again, because ambiguity is one of the two reasonable interpretations provided by the wording of the policy. So, if we write in knowing and voluntary, we win. I agree. I agree. I agree. Because solicitation, again, within the context of this phrase, all of the other words in that phrase do require knowing and voluntary activities. One does not accidentally solicit plaintiffs. One does not accidentally participate. One does not accidentally intervene in a lawsuit. And it's critical that we have to be talking about brought and maintained. There's a conjunctive. So it's a little bit dangerous just to say that this lawsuit was maintained as a result of the information provided by Mr. Gravis, because the wording of the clause is the conjunctive that it has to be brought and maintained, and there is a stipulation that says it was not brought by Mr. Gravis. There's also the rule about nullity, and I'm going to say this. Unless this Court is convinced, and I don't see – I would suggest that there's no basis for it to be convinced, but this does not include that assistance is not considered also when there's converse testimony, let's call that coarse, which is I've been subpoenaed and I must testify, then this law – then this policy is a nullity, because there's not a lawsuit around, I would suggest. That's kind of – yeah, it's interesting. It was brought or maintained, and then it switched to brought and maintained. Yes. There's not a lawsuit that is brought where an officer and director is not going to be called upon to testify at some point, and this would render the reading a nullity. And that Safeco v. Robert S. again is an instance where the Court – No, it should switch there. I'm sorry. Because it's the exception to the exclusion. It should switch from or to and. That doesn't help you. Thank you, Counsel. Thank you. Counsel, good morning. Could you speak up a little? It's hard to hear you. The Post and Counsel stated that there was an objective standard that was intended, but in the use of the term assistance, it seems to me that's a fuzzy term, and it does require some interpretation by this Court. I, like Mr. Bartlett, have not found any cases that define what assistance is in this context. There are other cases where there's been stipulations of active participation by insurance, like the voluntary hospital case that's referred to in the briefs. Did you happen to look afield at other kinds of liability insurance? Say that again, sir? Did you happen to look afield from D&O to other kinds of liability insurance? No, sir, I did not. I looked at the context of this after knowing that in my – I believe that the definition of assistance is an active participation, active involvement with a goal of assisting, of aiding something. There are a lot of commonalities. I mean, it's kind of like Fourth Amendment law is the same for shoplifters and murderers in most ways, and insurance, liability insurance has a lot of commonalities about collusion, cooperation, these other things. Yes, sir. But you don't know of other analogs? No, sir. I don't, not in the context that this is used. And I stress the context. I'd like to – although I'm not going to reiterate what Mr. Parker said, I would like to point out again that, as you just mentioned, Your Honor, brought and maintained. This has to be brought and maintained by – with the assistance of insurers. And it was never brought. No, no. That's not the way this works. No? No, because this is an exception to the exclusion. And so the only – you only get the exception to the exclusion if it's brought and maintained. If it's brought and maintained. Right. And this was something that, when you have the other words in there, the participation, the solicitation, those are – those give the meaning. Even if no officer brought the suit. So if an officer maintained the suit, then coverage is out. Right. Because this is the exception to the – Yeah. It'd have to be brought and maintained. No. No. No. No. You don't read it that way. If an officer brings it and doesn't maintain it, you lose. And if an officer doesn't bring it but maintains it, you lose. It suggests to me that there's more activity with the brought and maintained, there's more activity than just answering the telephone and giving information. And the answer is there is no coverage unless the suit is brought and maintained totally independently. Totally independently, right. Totally – okay, both. Both of the bringing and the maintenance. Right. And so it suggests to me a higher activity than just answering the telephone later after the lawsuit gets going. I'd like to point out a couple of other things that there's a reliance on Mr. Gravis, CW 14. That's how he's identified in the amended complaint. And he's an insured. But the pretextual basis upon which the insurance was withdrawn is illustrated if you look at CW 5 in that amended complaint. He gives exactly the same type of testimony concerning or essentially the same testimony. And he's not an insured. So there was – in fact, if you look at all 20 of the so-called confidential witnesses, they give more or less the same kind of testimony as alluded to or information that's stated in the – in the brief. So that I think that the assistance has to be something of more significance than just the – A lot of things, jury's not going to believe him if one person says them. But if there's corroboration by another person, especially an insider – That's different. But if we're talking about assistance in the frame of a lawsuit to a conclusion, so that there's a lawsuit and that you can look him back and see what the assistance has been, then it seems to me that the fact that there's a number of witnesses to this deletes the assistance. In fact, it brings it out of the realm of this exception. If it's a fact that is pretty much agreed to and that there's corroboration for it. So you were – started out your questioning by asking about the expectations of the insurance. And it would seem to me that with this fuzzy language, this assistance in this exception, and the nature of the coverage, that it would be the expectation of most insurers that for the payment of a $300,000 premium, there would be coverage for this major suit, which would not be destroyed by some person giving some information over the telephone about what was going on while you were employed at Monroe. Thank you, counsel. You're welcome, Your Honor. Counsel, you exhausted all your time, but why don't you take 30 seconds or a minute anyway, just in case you need to rebut something. I would just like to give this court clarification. It might go to the question of, is there anything else that could help us? It's not in our briefs, because I didn't realize this question was going to come up. It is actually 23, number 4, NO. 4, then all caps ACC, which is the American Corporate Council, docket 32. That sounds like some unpublished – It's available on Westlaw, but what it is, is it talks about – Docket 32 was it? Docket 32. So it's just some unpublished practice thing? It is Corporate Council's advice on how to negotiate your B&O policies. Yes, you've got it. And the reason I think it might be helpful to you, because it shows the sweet, generous nature and how these policies can be negotiated and taken into account, Sarney's Oxley, all of these others, and why it is so critical that you not inject things like intent into a test. I wasn't really looking for briefing. I was thinking more of Erie and thinking of what state law is. Thank you, Counsel. Thank you. Thank you.
judges: Kleinfeld, Rawlinson, Restani